# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### EASTERN DIVISION

| | |
|---|---|
| BANILLA GAMES, INC. and GROVER GAMING, INC., | |
| Plaintiffs, | |
| v. | Civil Action No. _____ |
| DARREN ZHANG, | |
| Defendant. | |

## VERIFIED COMPLAINT

Plaintiffs, Banilla Games, Inc. ("**Banilla**") and Grover Gaming, Inc. ("**Grover**") (collectively "**Plaintiffs**"), by counsel, state as follows for their Verified Complaint (the "**Complaint**") against Defendant, Darren Zhang ("**Darren**" or the "**Defendant**").

## INTRODUCTION

1.    Plaintiffs bring this action seeking injunctive and monetary relief for Defendant's willful infringement of Plaintiffs' intellectual property rights and other exclusive rights in and to Plaintiffs' FUSION brand of video gaming systems ("**FUSION Games**").

2.    Plaintiffs' FUSION Games are a series of game suites branded with Plaintiffs' FUSION mark. Each game suite in the series—e.g., "Fusion," "Fusion 2," "Fusion 3," "Fusion 4," "Fusion 5," and "Fusion Link"—comprises a different selection of five (5) individual games that a player can select for play.

3.    Grover creates the FUSION Games—both the individual games and each game suite—and Banilla is the exclusive distributor of the FUSION Games.

4.    Plaintiffs protect the individual games, game suites, FUSION brand, and underlying software via copyright, trademark, and trade secret protections.

5. Grover owns federal copyright registrations for the FUSION Games—for both the game suites and for individual games.

6. Plaintiffs own common law trademark rights in and to the FUSION mark, and Grover has a pending federal trademark application for the FUSION mark. Banilla owns federal trademark registrations for two BANILLA GAMES marks.

7. Banilla owns the North Carolina trademark registration for the FUSION mark.

8. Grover owns the trade secrets in and to the FUSION Games software.

9. Plaintiffs sue for copyright infringement under the United States Copyright Act of 1976, as amended (the "**Copyright Act**"), 17 U.S.C. § 101 *et seq.* These claims arise out of and are based on Defendant owning, operating, selling, distributing or placing counterfeit FUSION Games, and from which Defendant has profited. Plaintiffs seek all remedies afforded by the Copyright Act, including preliminary and permanent injunctive relief, Plaintiffs' damages and Defendant's profits from Defendant's willfully infringing conduct, and other monetary relief.

10. Plaintiffs sue for unfair competition and false designation of origin under Section 43(a) of the Lanham Act (the "**Lanham Act**"), 15 U.S.C. § 1125, and for substantial and related claims of unfair competition and trademark infringement under the statutory and common laws of the State of North Carolina. These claims arise out of and are based on Defendant's ownership, operation, sales, distribution and profits derived from counterfeit FUSION Games, games which all prominently display unauthorized uses of Plaintiffs' FUSION mark to attract players. Plaintiffs seek all remedies afforded by the Lanham Act and by the statutory and common laws of the State of North Carolina.

11. Plaintiffs sue for trade secret misappropriation under the Defend Trade Secrets Act ("**DTSA**"), 18 U.S.C. § 1836, *et seq.*, and for substantial and related claims of trade secret

misappropriation under North Carolina's Trade Secrets Protection Act, N.C. Gen. Stat. § 66-152, *et seq.* These claims arise out of and are based on Defendant's ownership, operation, sales, distribution and profits derived from counterfeit FUSION Games, games which contain pirated and hacked versions of Plaintiffs' software. Plaintiffs seek all remedies afforded by the DTSA and North Carolina's Trade Secrets Protection Act.

## PARTIES, JURISDICTION, AND VENUE

12.     Grover is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business in Greenville, Pitt County, North Carolina. Grover creates, designs, develops, and manufactures the software, artwork, and audiovisual effects for various electronic games in various markets, such as skill-based redemption and electronic pull-tab markets.

13.     Banilla is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business in Greenville, Pitt County, North Carolina. Banilla designs, develops, and distributes products for various board, nudge, skill, redemption, and amusement game markets.

14.     Defendant Darren Zhang is an individual and resident of North Carolina with his principal address at 520 E. Springhill Terrace, Jacksonville, North Carolina 28546. Darren is, among other things, an owner, operator, seller and distributor, who profited from the unauthorized use of Plaintiffs' copyrighted and trademarked material as described herein.

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, as Plaintiffs allege claims arising under the laws of the United States, including, but not limited to, federal copyright law.

16.     This Court also has personal jurisdiction over Defendant because Defendant transacted business in and knowingly committed and purposefully directed the acts occurring herein to the State of North Carolina, and Plaintiffs' claims arise from those activities.

17.     Venue is proper in this district under 28 U.S.C. §§ 1391(b) (2), and (3) and 1400(a), because Defendant resides and operates his business in this district, because a substantial part of the events or omissions giving rise to the claim, namely Defendant's infringing use of the copyrighted works in North Carolina, occurred in this District, and because a substantial part of the property that is the subject of this action was delivered into and is situated in this District.

## FACTS

## GROVER'S BUSINESS AND ITS INTELLECTUAL PROPERTY

18.     Since 2013, Grover has invested millions of dollars in developing high-quality and reliable electronic games of skill. Indeed, Grover has hired a growing team of dedicated employees who develop from scratch all design and software components of Grover's games in-house, while acting within the scope of their employment, including the games' source code, object code, two-dimensional and other artwork, static images, and other visual and audiovisual effects that help to make Grover's games an enjoyable experience for the end-user. In creating these products, Grover did not copy any of the artwork, static images, or audiovisual effects from another game or a non-Grover author.

19.     Plaintiffs also have invested substantial time, effort, and resources in marketing those games to their customers and providing top-level customer service to those customers who purchase those legitimate games.

20.     Grover's games are well respected by Plaintiffs' customers (e.g., the operators who purchase the games) and end-users (e.g., the individuals who play the games), each of whom have come to expect high-quality games and top-notch customer service from Plaintiffs.

21.     Grover is the owner of all intellectual property rights to the software for FUSION video gaming system (**"Fusion Games"**), which is a series of game suites, and those intellectual property rights include multiple federal copyright registrations issued by the United States Copyright Office for the computer files and associated audiovisual effects used in its FUSION line of video games, including the following:

- Number PA0002206908, obtained on October 11, 2019, for Grover's "Fusion" video game (the "**Fusion Copyrighted Work**").

- Number PA0002218349, obtained on October 11, 2019, for Grover's "Fusion 2" video game (the "**Fusion 2 Copyrighted Work**").

- Number PA0002218347, obtained on October 11, 2019, for Grover's "Fusion 3" video game (the "**Fusion 3 Copyrighted Work**").

- Number PA0002293309, obtained on May 24, 2021, for Grover's "Fusion 4" video game (the "**Fusion 4 Copyrighted Work**").

- Number PAu004088597, obtained on May 24, 2021, for Grover's "Fusion 5" video game (the "**Fusion 5 Copyrighted Work**").

- Number PA0002368424, obtained on July 19, 2022, for Grover's "Fusion Link" video game (the "**Fusion Link Copyrighted Work**").

Grover also owns federal copyright registrations for the two-dimensional artwork used in its individual game titles, including individual game titles that are incorporated into the FUSION suites of games.[1] Hereinafter, the above copyrighted works will be referred to collectively as the

---

[1] The federal copyright registrations for the two-dimensional artwork used in the individual game titles include, but are not limited to: Number VA0002186037, obtained on October 11, 2019, for two-dimensional artwork used in the game title Captain Calamari (the "**Captain Calamari Copyrighted Work**"); Number VA0002173744, obtained on October 11, 2019, for two-dimensional artwork used in the game title Crumble Cave (the "**Crumble Cave Copyrighted Work**"); Number VA0002186038, obtained on October 11, 2019, for two-dimensional artwork

"**Copyrighted Works.**" Moreover, Grover owns additional federal copyrights registrations for game titles used in products outside the FUSION suites of games.[2]

22.     In addition, Grover has used the trademark "FUSION" in commerce throughout the United States continuously since February 28, 2017, in connection with the creation, distribution, offering for sale, sale, marketing, and promotion of the FUSION Games, including the Copyrighted Works. Attached as **Exhibit A** are representative samples of materials showing Plaintiff's use of the "FUSION" mark (the "**Mark**") in connection with the FUSION Games.

23.     Grover has applied for registration of the Mark on the Principal Register and is the owner of United States Trademark Application Serial No. 90850171 filed in the United States

---

used in the game title Festival of Dragons (the "**Festival of Dragons Copyrighted Work**"); Number VA0002186039, obtained on October 11, 2019, for two-dimensional artwork used in the game title Great American Buffalo (the "**Great American Buffalo Copyrighted Work**"); Number VA0002184885, obtained on October 11, 2019, for two-dimensional artwork used in the game title VIP Lounge (the "**VIP Lounge Copyrighted Work**"); Number VA0002184975, obtained on October 11, 2019, for two-dimensional artwork used in the game title Midnight Wolf (the "**Midnight Wolf Copyrighted Work**"); and Number VA0002184978, obtained on October 11, 2019, for two-dimensional artwork used in the game title Princess of the Nile (the "**Princess of the Nile Copyrighted Work**").

[2]  The federal copyright registrations for the two-dimensional artwork used in the individual game titles include, but are not limited to: Number VA0002327342, obtained on November 1, 2022, for the game Rockin' Robin (the "**Rockin' Robin Copyrighted Work**") within the Diamond Skill Games 9 suite; Number VA0002368915, obtained on June 21, 2023, for the game Nut Shack (the "**Nut Shack Copyrighted Work**") within the Diamond Skill Games 7 suite; Number VA0002330427, obtained on November 1, 2022, for the game Oil Rush (the "**Oil Rush Copyrighted Work**") within the Diamond Skill Games 7 suite; Number VA0002368905, obtained on June 21, 2023, for the game Bathtime Bucks (the "**Bathtime Bucks Copyrighted Work**") within the Diamond Skill Games 1 suite; Number VA0002328793, obtained on November 3, 2022, for the game Pedro's Hot Tamales (the "**Pedro's Hot Tamales Copyrighted Work**") within the Diamond Skill Games 1 suite; Number VA000233055, obtained on November 3, 2022, for the game Snake Eyes (the "**Snake Eyes Copyrighted Work**") within the Diamond Skill Games 1 suite; Number VA0002329001, obtained on November 3, 2022, for the game American Sevens (the "**American Sevens Copyrighted Work**") within the Diamond Skill Games 4 suite; Number VA0002330609, obtained on November 3, 2022, for the game Lucky Striker (the "**Lucky Striker Copyrighted Work**") within the Diamond Skill Games 4 suite; and Number VA0002330560, obtained on November 3, 2022, for the game Major Cash (the "**Major Cash Copyrighted Work**") within the Diamond Skill Games 4 suite.

Patent and Trademark Office ("USPTO") on July 27, 2021, for the trademark "FUSION" (the **"Application"**). A copy of the application is attached as **Exhibit B**.

24.     Additionally, Banilla obtained a state registered trademark for "FUSION" (the "**FUSION Mark**") and is the owner of North Carolina Trademark Registration T-24749 for the FUSION Mark in connection with "recorded computer software for playing games of skill" and "recorded computer application software for video gaming consoles and video gaming machines for playing games of skill," which is in full force and effect. The North Carolina Certificate of Registration is attached as **Exhibit C**.

25.     By investing these resources over the last several years, Plaintiffs have established themselves as global leaders in the electronic gaming industry. As global leaders, Plaintiffs protect their businesses and products through best practices, including registration of copyrightable works, registration of trademarks and service marks, protection of their trade secrets, and protection of their other intellectual property, including through enforcement actions, such as this one, to ensure their rights and their intellectual property assets are not infringed or misappropriated.

26.     Indeed, in addition to the Copyrighted Works, Grover owns multiple copyrights in and to the computer files associated with its video games. Grover actively protects its Copyrighted Works, including the Fusion 4 Copyrighted Work and Fusion 5 Copyrighted Work, by having at least 34 active, registered copyrights surrounding its business and products.

27.     Plaintiffs also take commercially reasonable measures to ensure the confidentiality of Grover's proprietary software, including the software associated with the Copyrighted Works. In this regard, Plaintiffs: (a) maintain and protect source code as a trade secret; (b) take steps to prevent end-users from accessing source code through a process called "obfuscation;" and (c) actively protect the artwork used in computer files and software, including the Copyrighted

Works, by creating, registering, and maintaining copyrights in both the static images and the audiovisual effects used in the software.

## THE COPYRIGHTED WORKS

28.     Among its various products, Grover has created, owns, and sells, its FUSION Games, which games are comprised of software, both source code and object code, and artwork that make the FUSION Games well-known in the marketplace and distinctive to Plaintiffs. The FUSION Games' artwork includes both static images, as well as the audiovisual effects that connect those static images.

29.     The FUSION Games, currently in their sixth generation and each comprising a different suite of five games, contain material wholly original to Grover, and is copyrightable subject matter under the laws of the United States.

30.     Relevant to the instant dispute, Grover owns federal registrations in the Copyrighted Works. True and correct copies of the registrations for the Copyrighted Works are attached hereto as **Exhibit D**.

31.     Grover distributes its FUSION Games, including the Copyrighted Works, in stand-alone gaming cabinets, or as independent software, sold through its exclusive distributor, Banilla. End-users purchase these cabinets or the software and a particular version of the FUSION Games, such as the Copyrighted Works, from Banilla and then offer them for use by end-users in several states.

## GROVER'S TRADE SECRETS

32.     Computer software, like the FUSION Games, is comprised of source code and object code. Source code is created by a computer programmer with a text editor and is readable

by humans. Object code[3] is the output of a source code compiled into a machine code that contains a sequence of machine-readable instructions.

33.     With respect to the source code and object code associated with the FUSION Games, Grover creates the source code and saves it in multiple "library" files that are accessible only to employees who need access to them and who have executed a confidentiality agreement. Pursuant to the terms of this confidentiality agreement, Grover's employees are prohibited from disclosing any information concerning Grover's "confidential information," including source code. This obligation survives the termination of any employee's employment with Grover.

34.     Using a computer program known as a compiler, Grover transforms these human-readable library files into machine-readable object code, which object code forms the basis for the executable file that launches each game.

35.     The compiler includes an obfuscation feature,[4] which allows Grover to build redundancies into each version of its FUSION Games to prevent tampering and reverse engineering of its source code. Grover obfuscated the source code for each of its FUSION Games, including the Fusion 4 Game and Fusion 5 Game that is associated with the Fusion 4 Copyrighted Work and Fusion 5 Copyrighted Work.

36.     A certain "library" file controls Grover's activation mechanism ("**Activation Mechanism**"). The Activation Mechanism is responsible for determining whether the FUSION Games are authentic.

---

[3] Object code is a series of 1s and 0s and is generally only readable by machines. While a human might be able to understand the patterns with enough study, doing so would take a significant amount of time.

[4] Obfuscation is the deliberate act of creating object code with redundancies, so that it is even more difficult for humans to read and understand.

37.    Grover takes commercially reasonable measures to maintain its "library" files, including both its source code and its Activation Mechanism. These "library" files are confidential and proprietary to Grover and are maintained as trade secrets (together, the "**Source Code**").

38.    In particular, access to these "library" files is limited to employees who have a need to know the information and who have executed confidentiality agreements.

39.    Moreover, because Grover obfuscates its Source Code, it is not generally known outside of Grover and further allows Grover to maintain its Source Code as a trade secret. Indeed, because Grover obfuscates its Source Code, it would be very difficult for someone, even a sophisticated computer programmer, to re-create the exact logic used in the Source Code.

40.    Thus, Grover's "library" files derive independent economic value by remaining secret. Indeed, Grover's Source Code, and its secrecy, allows Grover to maintain its competitive advantage in the marketplace.

## BANILLA'S BUSINESS AND STATE TRADEMARK

41.    Banilla, as the exclusive distributor, sells and distributes FUSION Games. Through Banilla, the FUSION Games, including the Copyrighted Works, reach end-users, who, in turn, place the FUSION Games in their respective places of business.

42.    To obtain the FUSION Games, among others, and thus the Copyrighted Works, an individual or business must purchase the FUSION Games directly from Banilla or another legitimate reseller of the FUSION Games, to whom Banilla initially sold legitimate FUSION Games (e.g., Great Lakes Amusement).

43.    Banilla has been using the FUSION Mark in connection with the offering for sale, sale, and distribution of the FUSION Games in the United States for more than seven (7) years.

44. During this time, the FUSION Games have become some of the most popular skill games available with players, locations, route operators, and resellers alike. *See, e.g.,* https://banillagames.com/product-category/platforms/skill-games/fusion-series/. As a result of Banilla's longstanding use of the FUSION Mark, and the high quality of its goods and services, the mark has become widely known and famous throughout the United States and in North Carolina, is closely identified with Banilla, and represents substantial, valuable goodwill.

45. As a result of its widespread, continuous, and exclusive use of the inherently distinctive FUSION Mark to identify its products for various board, nudge, skill, redemption, and amusement game markets and Banilla as their source, Banilla owns valid and subsisting state statutory and common law rights to the FUSION Mark.

46. Banilla's FUSION Mark is distinctive to both the consuming public and Banilla's trade. The following chart depicts the FUSION Mark:



47. Banilla has expended substantial time, money, and resources marketing, advertising, and promoting its products for various board, nudge, skill, redemption, and amusement game markets sold under, among others, the FUSION Mark including through its

website, its sales team, trade shows, its signage, and numerous other means. For example, each year Banilla attends national and regional trade shows such as the Amusement Expo International (hosted by the Amusement and Music Operators Association ("AMOA") and the American Amusement Machine Association ("AAMA")), the Southern Amusement & Entertainment Expo (hosted by the Georgia Amusement and Music Operators Association ("GAMOA")), and the Wisconsin Amusement and Music Operators ("WAMO") Annual Conference & Trade Show. Banilla also hosts training sessions at some of those trade shows. *See, e.g.,* Matt Harding, *WAMO Annual Conference, Trade Show Held in Milwaukee*, RePlay Magazine (Aug. 6, 2021), https://www.replaymag.com/wamo-annual-conference-trade-show-held-in-milwaukee/ [replaymag.com].

48. Because of these efforts, the FUSION Mark throughout the United States, has achieved and maintains secondary meaning in the marketplace, has developed goodwill and recognition in the marketplace, and has become synonymous with Banilla's high quality products and services in the various board, nudge, skill, redemption, and amusement game markets.

49. Banilla's FUSION Mark and its products for various board, nudge, skill, redemption, and amusement game markets offered thereunder have received significant unsolicited coverage in various media.

## PLAINTIFFS' CEASE AND DESIST ATTEMPT

50. In or around May 2024, Plaintiffs learned that Defendant was in possession of, and was using, publicly displaying, selling, and/or distributing counterfeit, pirated, or hacked versions of the Fusion 4 Copyrighted Work and allowing such counterfeit and unauthorized games to be used by his customers (i.e., end-users). Pirated software is the unauthorized use, copying, or distribution of copyrighted software and can take many forms, including the unauthorized, illegal

access to protected software, and/or reproducing or distributing counterfeit or otherwise unauthorized software.

51.    After learning of Defendant's use of unauthorized, pirated, and counterfeit machines, Banilla and Grover exercised reasonable diligence and verified that such unauthorized use of pirated or counterfeited machines by Defendant was occurring and continuing.

52.    Following verification of Defendant's use of the unauthorized, pirated, and counterfeit machines, Banilla and Grover sent a Cease-and-Desist Letter to Defendant on or around June 3, 2024. The Cease-and-Desist letter demanded, among other things, that Defendant, and all employees, representatives and other persons in participation with Defendant, immediately cease and desist from owning, operating, publicly displaying, offering for use, selling, or vending any and all counterfeit FUSION Games, or other Banilla products.

53.    Despite the Cease-and-Desist Letter being physically delivered, Defendant has failed to respond to Plaintiffs' demands, and upon information and belief, continues to use the unauthorized, pirated, and counterfeit machines and likely additional counterfeit Grover and Banilla products.

## DEFENDANT'S INFRINGEMENT OF THE FUSION 4 COPYRIGHTED WORK AND OF THE MARK

54.    Upon information and belief, Defendant purchased and/or vended unauthorized, pirated, and/or hacked versions of the Copyrighted Works on the secondary market (the "**Illicit Games**"). These cabinets and the Illicit Games therein were neither created, sold, nor otherwise authorized or licensed by Plaintiffs. Upon information and belief, Defendant has either sold, distributed, publicly displayed, and/or vended additional Illicit Games or has the means, motive, and capability to obtain, provide, and use more Illicit Games.

55.     Upon information and belief, the Illicit Games are the product of a third party unpackaging, decompiling, and de-obfuscating Grover's trade secrets. Using this process, the third party was able to gain access to Grover's multiple "library" files, which contain Grover's proprietary Source Code and trade secrets. In other words, the third party was able to misappropriate Grover's trade secrets by undoing the deliberate and intentional steps Grover took and had taken to prevent third parties from ascertaining Grover's trade secrets.

56.     Upon information and belief, through this certain third party's efforts, they were able to bypass Grover's validation logic by altering the Activation Mechanism and market and sell hacked versions of the Illicit Games.

57.     The hacked/pirated/counterfeit Illicit Games are sold for significantly less than genuine products. A genuine game board for the Fusion 4 Game costs $4,995.00. Upon information and belief, Defendant paid significantly less for his Illicit Games. This model allows the misappropriating third party, such as Defendant, to undercut Banilla's market share and steal Banilla's profits. In addition, Defendant can increase his profits at the expense of Banilla and Grover. By purchasing Illicit Games at a cheaper price, Defendant can maximize profits by receiving a larger portion of gross revenue, and ultimately secure locations that otherwise would use Plaintiffs' legitimate machines.

58.     Defendant sold and/or provided at least one (1) Illicit Game that knowingly misappropriated Grover's trade secrets and Fusion 4 Copyrighted Work and placed the Illicit Game in commerce at 202 Turner Drive, Reidsville, North Carolina 27320. Additionally, Defendant has sold at least one (1) Illicit Game on Facebook Marketplace that knowingly misappropriated Grover's trade secrets and Fusion 4 Copyrighted Work.

59.     Defendant's Illicit Games are nearly identical to the Copyrighted Works, in that they present the same game play and almost identical artwork. However, the Illicit Games perform at slower speeds than the Copyrighted Works, and the artwork in the Illicit Games present dimmer artwork than the Copyrighted Works. Additionally, the game boards that run the Illicit Games are designed completely different from Plaintiffs' genuine game boards.

## THE ILLICIT GAMES INFRINGE THE FUSION 4 COPYRIGHTED WORK

60.     Grover created, designed, and owns the audiovisual effects that tie together the artwork used in the Copyrighted Works, and in this instance the Fusion 4 Copyrighted Work, which effects depict a series of related images that, when shown in a sequence, impart an impression of motion and the expression fixed in motion.

61.     The Copyrighted Works are wholly original, and Grover is the exclusive owner of all right, title, and interest in the Copyrighted Works and the owner of all the exclusive rights associated with those Copyrighted Works, including, but not limited to, the right to reproduce its software in copies and to distribute those copies to the public. Additionally, 17 U.S.C. § 106(5) also provides Grover, as copyright holder for "motion picture or other audiovisual works", the exclusive right to display the work publicly.

62.     Defendant has published and publicly displayed unauthorized, unlicensed, and counterfeit reproductions of the Fusion 4 Copyrighted Work without Grover's authorization, consent, or knowledge, and without any compensation to Grover. In particular, Defendant has published and publicly displayed unauthorized, unlicensed, and counterfeit versions of the Fusion 4 Copyrighted Work each time consumers buy and play his Illicit Games.

63.     As a result of Defendant's willful actions, Grover has been damaged, and continues to be damaged, by the unauthorized publication and public display of counterfeit versions of the

Copyrighted Works. Defendant has never accounted to or otherwise paid Grover for his improper, illegal, and unauthorized use of counterfeit versions of the Copyrighted Works.

64.    Defendant's acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Grover, for which Grover has no adequate remedy at law.

## THE ILLICIT GAMES INFRINGE THE SOURCE CODE

65.    Grover considers its Source Code confidential information and a trade secret and has taken reasonable steps to keep its Source Code secret.

66.    Defendant purchased the Illicit Games, which misappropriated Grover's Source Code.

67.    Defendant's actions, including Defendant's use, marketing, and/or selling of the Illicit Games, also misappropriates Grover's Source Code.

68.    Defendant's foregoing actions, including the improper access to and use of Grover's Source Code, were done without Grover's permission.

69.    Defendant's acts are causing, and, unless restrained, will continue to cause damage and immediate irreparable harm to Grover, for which Grover has no adequate remedy at law.

70.    Defendant's acts have caused, and will continue to cause, Grover to lose profits.

## DEFENDANT'S IMPACT ON GROVER AND BANILLA

71.    Banilla is Grover's exclusive distributor of FUSION Games. Banilla sells FUSION Games to end-users, who, in turn, use them in their places of business.

72.    Before Defendant began offering and displaying the Illicit Games, consumers associated any FUSION Games with Grover and Banilla.

73.    Defendant's Illicit Games are similar in every way to authentic FUSION Games sold and distributed by Banilla. For example, the following chart shows images from Grover's

Fusion 4 gaming system in the left column, and images taken of Defendant's Illicit Games in the right column during Plaintiffs' due diligence:



| GROVER'S FUSION PACKAGE | DEFENDANT'S ILLICIT GAME |
| --- | --- |

74. Consumers likely will associate Defendant's Illicit Games with Banilla and Grover because, *inter alia*, Defendant's Illicit Games mimic in every way the experience provided by the Fusion 4 Games—among the other games Defendant are purporting to sell.

75. Defendant has engaged in an unfair method of competition and unfair trade practice.

76. Defendant's acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Banilla and Grover for which Banilla and Grover have no adequate remedy at law.

## FIRST CLAIM FOR RELIEF
### *(Grover – Copyright Infringement)*

77.     Plaintiffs repeat and incorporate the preceding Paragraphs by reference.

78.     The Copyrighted Works are motion picture/audiovisual effects containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*

79.     Grover is the exclusive owner of all exclusive rights under copyright in the Copyrighted Works. Grover owns valid copyright registrations, issued by the United States Copyright Office, for the Copyrighted Works, specifically the Fusion 4 Copyrighted Work. *See* Exhibit D.

80.     The Copyrighted Works were created in-house by Grover employees acting within the scope of their employment. None of these employees have any contractual rights to ownership of the Copyrighted Works and, as such, the Copyrighted Works constitute works made for hire.

81.     The Copyrighted Works were registered within five (5) years of the first publication of the Copyrighted Works.

82.     By making the Illicit Games available for use by end-users, Defendant has publicly displayed and published pirated, hacked, and/or counterfeit copies of the Fusion 4 Copyrighted Work, and has done so without Grover's permission.

83.     Upon information and belief, Defendant's infringing conduct was, and continues to be, willful, with full knowledge of Grover's interest in the Copyrighted Works, and specifically the Fusion 4 Copyrighted Work.

84.     As a direct and proximate result of Defendant's willful, and continuing, infringement of Grover's Copyrighted Works, and pursuant to 17 U.S.C. § 503(a), this Court "may order the impounding . . . (A) of all copies or phonorecords claimed to have been made or used in

violation of the exclusive right of the copyright owner; . . . (C) of records documenting the manufacture, sale, or receipt of things involved in any such violation, provided that any records seized under this subparagraph shall be taken into the custody of the court."

85.     As a direct and proximate result of Defendant's willful infringement of Grover's copyrights, Grover is entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), in an amount of up to $150,000.00 with respect to Defendant's infringing use of the Copyrighted Works, and specifically the Fusion 4 Copyrighted Work, or such other amount as may be appropriate under 17 U.S.C. § 504(c). Alternatively, at Grover's election, pursuant to 17 U.S.C. § 504(b), Grover shall be entitled to its actual damages, including Defendant's profits from the infringements, as will be proven at trial.

86.     In all events, Defendant's acts are causing, and, unless restrained, will continue to cause, damage and immediate irreparable harm to Grover, for which Grover has no adequate remedy at law. Grover is thus entitled to impoundment of the Illicit Games, preliminary injunction, and permanent injunction.

## SECOND CLAIM FOR RELIEF
### *(Grover – Contributory Copyright Infringement)*

87.     Plaintiffs repeat and incorporate the preceding Paragraphs by reference.

88.     Defendant has no authorization, permission, license, or consent to use and/or utilize and exploit the Fusion 4 Copyrighted Work in the Illicit Games at issue.

89.     Defendant had knowledge that the Illicit Games are unauthorized, pirated, hacked, and/or counterfeit copies of the Fusion 4 Copyrighted Work.

90.     Defendant materially contributed to the continued infringement of Grover's Fusion 4 Copyrighted Work by continuing to provide the Illicit Games in commerce.

- 19 -

91. The foregoing acts of infringement by Defendant have been willful, intentional, and purposeful, in complete disregard of Plaintiffs' rights.

92. As a direct and proximate result of Defendant's willful infringement of Plaintiffs' copyrights, Plaintiffs are entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), in an amount of up to $150,000.00 with respect to Defendant's infringing use of the Copyrighted Works, or such other amount as may be appropriate under 17 U.S.C. § 504(c). Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiffs shall be entitled to their actual damages, including Defendant's profits from the infringements, as will be proven at trial.

93. Plaintiffs are also entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

### THIRD CLAIM FOR RELIEF
*(Grover and Banilla – False Designation of Origin and*
*Unfair Methods of Competition Pursuant to 15 U.S.C. § 1125)*

94. Plaintiffs repeat and incorporate the preceding Paragraphs by reference.

95. Banilla is Grover's exclusive distributor of Grover's FUSION Games, which games are sold by Banilla as either software boards or in freestanding gaming cabinets.

96. Defendant has marketed, publicly displayed, presented, and offered for use to consumers his Illicit Games, which mimic the Fusion 4 Copyrighted Work in interstate commerce. The Illicit Games were neither authorized, created, sold, licensed, sponsored, nor distributed by Plaintiffs.

97. Defendant is passing off his Illicit Games as those authorized, created, licensed, sold, and/or distributed by Plaintiffs.

98. Defendant's Illicit Games are likely to cause confusion, mistake, or deception of the consuming public as to the origin, source, sponsorship, or affiliation of his Illicit Games. Actual

and potential consumers, upon encountering Defendant's Illicit Games, are likely to mistakenly believe that Defendant's Illicit Games originate with, or are sold, licensed, approved, sponsored by, or otherwise affiliated with Plaintiffs.

99.     By his unauthorized conduct, use of counterfeit copies of the Fusion 4 Copyrighted Work, and unauthorized use of Plaintiffs' trademarks, Defendant has engaged in unfair competition with Plaintiffs, false designation of origin, and misleading description and representation of fact in violation of the Lanham Act, 15 U.S.C. § 1125(a).

100.    Upon information and belief, Defendant's actions have been, and continue to be, willful and with the intent to profit from the goodwill established by Plaintiffs in the FUSION Games. Defendant's actions are intended to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiffs.

101.    Plaintiffs are entitled to an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs, under 15 U.S.C. §§ 1116-17, as well as pre- and post-judgment interest.

102.    Defendant's conduct is causing immediate and irreparable harm and injury to Plaintiffs, and to their goodwill and reputation, and will continue to both damage Plaintiffs and confuse the public unless enjoined. Plaintiffs have no adequate remedy at law. Plaintiffs are thus entitled to a temporary restraining order, preliminary injunction, and permanent injunction.

**FOURTH CLAIM FOR RELIEF**
*(Banilla – State Trademark Infringement pursuant to N.C. Gen. Stat. § 80-11)*

103.    Plaintiffs repeat and incorporate the preceding Paragraphs by reference.

104.    The aforementioned activities of Defendant constitute trademark infringement and violate the North Carolina Trademark Registration Act N.C. Gen. Stat. § 80-1 *et seq.* and are actionable under N.C. Gen. Stat. § 80-11.

- 21 -

105. Defendant's wrongful actions described herein were committed with knowledge that the FUSION Mark is registered and with the willful intent to cause confusion, mistake, or deceit, or to otherwise trade on Banilla's goodwill, and such wrongful actions have been committed without previously obtaining Banilla's consent.

106. Defendant's use is unauthorized and is likely to cause confusion among consumers concerning the origin of the products marketed by the parties and to create a false designation of origin of the goods marketed under Banilla's mark.

107. Defendant's wrongful conduct has and will diminish the goodwill associated with Banilla.

108. Unless Defendant is enjoined from his unlawful conduct, Banilla will continue to suffer irreparable harm for which it has no adequate remedy at law.

109. Banilla is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, and treble damages under N.C. Gen. Stat. §§ 80-11, 80-12. 75-1.1, and 75-16.

**FIFTH CLAIM FOR RELIEF**
*(Grover and Banilla –Unfair and Deceptive Acts or Practices)*

110. Plaintiffs repeat and incorporate the preceding Paragraphs by reference.

111. Defendant's copyright infringement, misappropriation of trade secrets, and unfair methods of competition constitute unfair or deceptive acts or practices, as those terms are defined under N.C. Gen. Stat. § 75-1.1.

112. Defendant's actions in passing off his Illicit Games as those authorized, created, licensed, sold, and/or distributed by Plaintiffs are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public

as to the origin and quality of Defendant's Illicit Games, thereby causing harm to the reputation and goodwill of Plaintiffs.

113.    Defendant's unfair or deceptive acts or practices were in or affecting commerce, as that term is defined under N.C. Gen. Stat. § 75-1.1.

114.    Defendant's unfair or deceptive acts or practices proximately caused Plaintiffs to suffer a loss.

115.    Plaintiffs have been damaged by Defendant's unfair or deceptive acts or practices in an amount in excess of $75,000.00, exclusive of interest and costs.

116.    Plaintiffs are entitled to have any recovery from Defendant trebled under N.C. Gen. Stat. § 75-16.

117.    In all events, Defendant's acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiffs, for which Plaintiffs have no adequate remedy at law. Plaintiffs are thus entitled to an injunction.

## SIXTH CLAIM FOR RELIEF
*(Grover and Banilla – Common Law Trademark Infringement)*

118.    Plaintiffs repeat and incorporate the preceding Paragraphs by reference.

119.    This claim is for common law trademark infringement against Defendant based on his sale, offering for sale, use, placement, marketing, and/or public display of the Illicit Games bearing Grover's Mark. Grover is the owner of all common law rights in and to Grover's Mark.

120.    Defendant, without authority, has used and is continuing to use Grover's Mark, and counterfeit imitations thereof, in connection with the sale, offering for sale, use, placement, marketing, and/or public display of the Illicit Games, thereby inducing Defendant's customers and/or clients, and others, to believe, contrary to fact, that the Illicit Games placed/sold by Defendant emanate or originate from Plaintiffs, or that Plaintiffs have approved, permitted,

licensed, or otherwise associated themselves with Defendant and his Illicit Games. Defendant's acts have damaged, impaired, and diluted that part of goodwill symbolized by the Mark, to Grover's immediate and irreparable damage.

121. Actual and potential consumers, upon encountering Defendant's Illicit Games, are likely to be confused about the source of origin of the Illicit Games and will likely mistakenly believe that Defendant's Illicit Games originate with, or are sold, licensed, approved, sponsored by, or otherwise affiliated with Plaintiffs.

122. Defendant's unauthorized use of the Mark or counterfeit imitations thereof, which are either identical or confusingly similar to Grover's Mark, in connection with the advertising and sale of FUSION Games or Illicit Games, is likely to cause confusion, mistake, or deception as to the source of Defendant's Illicit Games and constitutes infringement of the Mark under the common law of North Carolina.

123. Defendant has used the Mark on his Illicit Games that were not manufactured by or authorized by Plaintiffs, and, therefore, Defendant has deliberately attempted to deceive and mislead consumers.

124. At all times relevant hereto, Defendant had actual and direct knowledge of Grover's prior use and ownership of the Mark. Defendant's acts, therefore, are done in bad faith and with actual malice in order to exploit the goodwill and strong brand associated with the Mark and constitute common law trademark infringement under the common law of North Carolina.

125. Defendant, through his continued and unauthorized use of the Mark, is unfairly benefiting from and misappropriating Plaintiffs' goodwill and reputation, resulting in serious, substantial, and irreparable injury to the Plaintiffs and the public.

## SEVENTH CLAIM FOR RELIEF
*(Grover – Misappropriation of Trade Secrets*
*Pursuant to 18 U.S.C. § 1836(b))*

126.     Plaintiffs repeat and incorporate the preceding Paragraphs by reference.

127.     Grover's confidential information includes trade secrets and/or other proprietary information that derives independent economic value from not being known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

128.     Grover's confidential and trade secret information has been and continues to be the subject of reasonable measures to keep such information secret.

129.     Defendant misappropriated such confidential and trade secret information of Grover in connection with the distribution and sale of the Illicit Games.

130.     Defendant, at the time of use, knew, or had reason to know, the Illicit Games and the confidential and trade secret information used to create the Illicit Games were derived from or through a person who had utilized improper means to acquire such information.

131.     As a result of Defendant's misappropriation, Grover has been and continues to be damaged and irreparably injured, including, without limitation, the loss of sales and profits it would have earned but for Defendant's actions, and damage to Grover's reputation among potential and existing customers, business partners, investors, and in the industry in general.

132.     Defendant's misappropriation is willful and malicious and thereby entitles Grover to an award of exemplary damages.

133.     Defendant's misappropriation of Grover's confidential and trade secret information has caused and will continue to cause Grover irreparable and substantial injury, and, therefore, cannot be fully redressed through damages alone. An injunction prohibiting Defendant from

further use or disclosure of Grover's confidential and trade secret information is necessary to provide Grover with complete relief.

<u>**EIGHTH CLAIM FOR RELIEF**</u>

*(Grover – Violation of North Carolina's Trade Secrets Protection Act)*

134.    Plaintiffs repeat and incorporate the preceding Paragraphs by reference.

135.    Without Grover's consent or permission, and in violation of North Carolina's Trade Secrets Protection Act, N.C. Gen. Stat. § 66-152, *et seq.*, Defendant misappropriated Grover's confidential and proprietary trade secrets, including, but not limited to, its Source Code.

136.    Grover's confidential and trade secret information is not generally known to or readily ascertainable by proper means to other people.

137.    Defendant, at the time of use, knew, or had reason to know, the Illicit Games and the confidential and trade secret information used to create the Illicit Games, were derived from or through a person who used improper means to acquire such information.

138.    Defendant misappropriated Grover's confidential information and trade secrets, including, but not limited to, its Source Code, by using the Illicit Games through marketing, use, and either selling, or offering to sell, the Illicit Games into the open market.

139.    The aforementioned trade secrets have independent economic value from not being generally known to other persons.

140.    Grover has taken reasonable precautions to maintain its confidential and trade secret information as confidential information, including, but not limited to, limiting access to such confidential and trade secret information.

141.    In violation of North Carolina's Trade Secrets Protection Act, Defendant misappropriated Grover's trade secrets to benefit himself.

142.   Defendant's actions in misappropriating Grover's trade secrets were done in a knowing, willful, and malicious manner.

143.   As a result of Defendant's actions, Grover has been damaged, and continues to be damaged, by the unauthorized reproduction, publication, distribution, public display, and sale of the Illicit Games. Defendant has never accounted to or otherwise paid Grover for his use of the Illicit Games.

144.   Defendant's acts are causing, and, unless restrained, will continue to cause, damage and immediate irreparable harm to Grover for which Grover has no adequate remedy at law.

145.   Defendant's actions have caused, and will continue to cause, Grover to lose profits.

146.   Plaintiffs are entitled to actual damages as a result of Defendant's misappropriation or a reasonable royalty for Defendant's misappropriation.

147.   As a result of Defendant's misappropriation, Grover is entitled to an award of its damages, costs, reasonable attorneys' fees, and punitive damages, as well as injunctive and equitable relief.

WHEREFORE, Plaintiffs pray of the Court as follows:

1.   For judgment that Defendant, Darren Zhang:

(a)   has violated the Copyright Act, 17 U.S.C. §§ 101, *et seq.*;

(b)   has violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

(c)   have engaged in trademark infringement in violation of N.C. Gen. Stat. § 80-11;

(d)   has engaged in unfair competition in violation of N.C. Gen. Stat. § 75-1.1;

(e)   has violated 18 U.S.C. § 1836(b);

(f)     has engaged in trademark infringement in violation of the common law of North Carolina; and

(g)     has violated North Carolina's Trade Secrets Protection Act, N.C. Gen. Stat. § 66-152, *et seq.*

2.      That an injunction be issued enjoining and restraining Defendant, Darren Zhang, and each of his officers, agents, employees, attorneys, representatives, and all those in active concert or participation with him from:

(a)     Defendant's continued use, publication, and display of the Copyrighted Works;

(b)     Defendant's use of Banilla's state registered trademark; and

(c)     Defendant's continued deceptive practices, including marketing or passing off the Illicit Games in interstate commerce; and

(d)     Defendant's use of Grover's trademarks, intellectual property, and confidential information, including the Illicit Games.

3.      For the entry of an Order directing Defendant, Darren Zhang, and all other persons, firms, or corporations in active concert or privity or in participation with Defendant, to deliver up for destruction to Plaintiffs, all products, advertisements, promotional materials, packaging, and other items in his possession or under his control bearing the Copyrighted Works, or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, pursuant to 15 U.S.C. § 1118 and 17 U.S.C. § 503(b);

4.      For an assessment of: (a) actual damages, plus the amount of Defendant's profits attributable to the infringement(s), or, in the alternative, an assessment of statutory damages, as authorized by 17 U.S.C. § 504(c) in an amount no less than $150,000.00; and (b) additional

damages as authorized by 17 U.S.C. § 504(c) for Defendant's willful and knowing infringement of the Copyrighted Works;

5.      For an assessment of: (a) damages suffered by Plaintiffs, pursuant to 15 U.S.C. § 1117(a); (b) an award of Plaintiffs' costs and attorneys' fees to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117; and (c) profits, damages and fees, to the full extent available, pursuant to 18 U.S.C. § 1836(b) and/or N.C. Gen. Stat. § 66-154; and (d) punitive damages to the full extent available under the law;

6.      For a judgment against Defendant in an amount to be determined at trial, plus interest and costs, as allowed by law;

7.      For any damages awarded to Plaintiffs, as allowed by law for Defendant's violations, including enhanced and punitive damages;

8.      For costs and reasonable attorneys' fees, as allowed by law;

9.      For a trial by jury on all issues so triable; and

10.     For such other and further relief as the Court may deem just and proper.

Dated:  November 7, 2024                 BANILLA GAMES, INC. and
                                         GROVER GAMING, INC.

                                          /s/ Eric C. Rowe
                                         Eric C. Rowe, Esquire (N.C. Bar #10713)
                                         WHITEFORD, TAYLOR & PRESTON, L.L.P.
                                         1800 M Street, NW, Suite 450N
                                         Washington, D.C. 20036
                                         Telephone: (202) 659-6787
                                         Facsimile: (202) 689-3164
                                         E-Mail: erowe@whitefordlaw.com

                                         and

Stephen M. Faraci, Sr., Esquire (VSB No. 42748)
Robert N. Drewry, Esquire (VSB No. 91282)
(*pro hac vice* applications forthcoming)
WHITEFORD, TAYLOR & PRESTON, L.L.P.
1021 E. Cary Street, Suite 2001
Richmond, Virginia 23219
Telephone: (804) 977-3307
Facsimile: (804) 977-3298
E-Mail: sfaraci@whitefordlaw.com
E-Mail: rdrewry@whitefordlaw.com

*Counsel for Plaintiffs,*
Banilla Games, Inc. and Grover Gaming, Inc.

**VERIFICATION**

STATE OF NORTH CAROLINA

COUNTY OF PITT

 Garrett Blackwelder, being duly sworn, deposes and says that he is the President of

Banilla Games, Inc. and Grover Gaming, Inc. and as such is authorized to make this verification

that he has read the foregoing VERIFIED COMPLAINT and the same is true of his own

knowledge, except as to those matters and things stated on information and belief, and, as to

those, he believes them to be true.

           _____

           Garrett Blackwelder, President
           Banilla Games, Inc. and
           Grover Gaming, Inc.

STATE OF NORTH CAROLINA

COUNTY OF PITT

 Sworn to (or affirmed) and subscribed before me this day by Garrett Blackwelder,

President of Banilla Games, Inc. and Grover Gaming, Inc.

Date: __11/7/24__

           _____
           *Signature of Notary Public*

My commission expires: __8/1/26__

           
> Dorwin L Howard, Jr
> NOTARY PUBLIC
> Pitt County, NC
> My Commission Expires August 01, 2026

- 31 -